# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

JAMES HOMONAI and
RITA HOMONAI,

    Plaintiffs,

v.                                          Case No: 5:16-cv-610-Oc-30PRL

THE CITY OF FRUITLAND PARK,
STEVEN FOSTER and JARED
CRENSHAW,

    Defendants.

## ORDER

Rita and James Homonai allege City of Fruitland Park Police Officers Steven Foster and Jared Crenshaw used excessive force against them. The Homonais sued the City and officers for violations of their constitutional rights and Florida law. The City and officers now move to dismiss the nine-count Complaint for myriad reasons. Because the claims are properly pled, the Court concludes the motion to dismiss should be denied.

## FACTUAL BACKGROUND

On October 28, 2012, James Homonai ("JH") was driving his motorcycle with his wife, Rita Homonai ("RH"), on the back. City of Fruitland Park Police Officer Jared Crenshaw conducted a traffic stop for speeding. Officer Steven Foster arrived to assist

Crenshaw. A video recording of the stop was filed by the parties and reviewed by the Court.[1]

During the traffic stop, Crenshaw learned JH had a suspended license and began to place JH under arrest. During the arrest, Crenshaw had JH lean over the passenger side of the police cruiser and place his hands on the hood. Crenshaw began to search JH, and JH told Crenshaw he had a knife in his pocket. JH was, at this point, compliant and did not resist Crenshaw. RH, now standing at the front of the cruiser, told the officers she wanted to take JH's phone, and became upset when the officers denied her request.

The video of what follows speaks for itself, and the Court declines to provide its own commentary or characterization. Suffice to say, Foster took RH by the arm, and used his stun gun on JH and RH, before placing RH in handcuffs. Crenshaw and JH moved out of the camera's range, but it appears Crenshaw also used his stun gun on JH before handcuffing him and placing him in the police cruiser. Paramedics were called to attend to RH, who allegedly suffered significant injuries. RH was taken away by ambulance.

The Homonais were both charged: RH with resisting arrest without violence; and JH with driving on a suspended license, resisting arrest with violence, and battery on a law

---

[1] Although courts do not normally consider traffic stop videos at the motion to dismiss stage of the proceedings, the Court concludes it is permitted to take judicial notice of this video as a public record under Federal Rule of Evidence 201. *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006); and *see generally Brewer v. Pensacola Police Dep't,* No. 3:15CV469/MCR/CJK, 2015 WL 8113253, at *4 (N.D. Fla. Nov. 13, 2015) (noting that an arrest video is available through Florida's Public Records Act). Regardless, all parties refer to the video in their filings, and it is referenced in the Complaint. (Doc. 1, ¶ 36).

enforcement officer. The charge against RH was dismissed; the Court does not know what happened to JH's charges.

The Homonais sued the officers and the City of Fruitland Park (the "City"), alleging the following counts:

**Count I:** § 1983 claim by RH against Foster for violation of Fourth and Fourteenth Amendments for using excessive force and for false arrest;

**Count II:** § 1983 claim by RH against Crenshaw for violation of Fourth and Fourteenth Amendments for failing to intervene and false arrest;

**Count III:** § 1983 claim by JH against Foster for violation of Fourth and Fourteen Amendments for failing to intervene and for excessive force;

**Count IV:** § 1983 claim by JH against Crenshaw for violation of Fourth and Fourteenth Amendments for failing to intervene and for excessive force;

**Count V:** § 1983 claim by RH against the City for violation of Fourth and Fourteenth Amendments for false arrest and for excessive force;

**Count VI:** § 1983 claim by JH against the City for violation of Fourth and Fourteenth Amendments for excessive force;

**Count VII:** Florida law claim by RH against the City for False Arrest and False Imprisonment;

**Count VIII:** Florida law claim by RH against the City for battery; and

**Count IX:** Florida law claim by JH against the City for battery.

## **MOTION TO DISMISS STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted); *Day v.*

3

*Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Courts must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson*, 551 U.S. at 93–94.

Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a complaint must instead contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). This plausibility standard is met when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

## **DISCUSSION**

Defendants raise numerous grounds for why the Complaint should be dismissed, all of which are without merit for the reasons explained below. The Court has also reorganized Defendants' arguments in a more logical order and to condense repetitive arguments raised in several parts of their motion.

### A. Statute of Limitations

Defendants claim the Homonais claims are all time-barred by the applicable four-year statute of limitations. Defendants argue the limitation periods began to run on October 28, 2012, which is more than four years before the Complaint was filed on January 18, 2017. This argument, though, is easily dismissed because the Complaint was not filed on

January 18, 2017—it was filed October 11, 2016, within four years of October 28, 2012. So Defendant's argument that the claims are time-barred is meritless.

**B. Failure to Provide Pre-Suit Notice, pursuant to § 768.28, Fla. Stat.**

Defendants also claim the Homonais failed to plead that they provided the pre-suit notice required by section 768.28(6)(a), Florida Statutes, for Counts VII, VIII, and IX, and that the pre-suit notice was actually not provided. This claim is also easily dismissed. The Complaint (Doc. 1) alleges compliance with the pre-suit notice requirements in paragraphs 90, 99, and 109. And the Homonais provided copies of the pre-suit notice letters they sent. (Doc. 27, Exs. 1 and 2). So this argument also fails.

**C. Failure to Comply with Federal Rules of Civil Procedure 8 and 10, Complaint is a Shotgun Pleading, and Failure to State a Claim, Generally**

Defendants' next arguments are that the Complaint fails to comply with Federal Rules of Civil Procedure 8 and 10—thus failing to state claims—and that the Complaint is an improper shotgun pleading. Defendants argue the Complaint "contains nothing more than labels, legal conclusions and boilerplate statutory language." (Doc. 21, p. 4). Contrarily, Defendants argue the Complaint is defective because it incorporates nearly 45 factual allegations into each count. (Doc. 21, pp. 5–6). Defendants also argue the Complaint fails to comply with Rule 10 because it is "not properly separated into counts…." (Doc. 21, p. 5) (emphasis in original).

All of these arguments lack merit. The Complaint provides a detailed factual background, and then reincorporates that background—and only that background—into each count. The allegations are not so vague that Defendants cannot respond, and the

Complaint is not an impermissible shotgun pleading. The Complaint is also properly separated into nine counts. The Complaint provides notice to Defendants of their complained of conduct and alleged violations of federal and Florida law, thus complying with rules 8 and 10 and providing Defendants "fair notice of what the claim[s are] and the grounds upon which [they] rest." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### D. Qualified Immunity for Officers for § 1983 Claims

Crenshaw and Foster each claim qualified immunity. "To receive qualified immunity, 'the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.' " *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004). There is no dispute here that Crenshaw and Foster were acting within the scope of their discretionary authority. Once a defendant demonstrates he was acting within the scope of his discretionary authority, "the burden then shift[s] to the [plaintiff] to show that qualified immunity should not apply because: (1) the [official] violated a constitutional right, and (2) that right was clearly established at the time of the incident." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009). A plaintiff withstands a motion to dismiss predicated on qualified immunity by alleging "sufficient facts to support a finding of a constitutional violation of a clearly established law." *Chandler v. Sec'y of Fla. Dep't of Transp*., 695 F.3d 1194, 1198 (11th Cir. 2012) (citing *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009)); *see also Andreu v. Sapp*, 919 F.2d 637, 639 (11th Cir. 1990) ("[T]he defendant is entitled to dismissal when the

plaintiff has failed to allege a violation of a clearly established right."). The Court notes the officers' qualified immunity claims encompass the false arrest, excessive force, and failure to intervene claims, which are analyzed separately below.

### 1. Qualified immunity for false arrest

To be entitled to qualified immunity for a section 1983 false arrest claim, an officer need only have arguable probable cause to make the arrest. *Kingsland*, 382 F.3d at 1232. A plaintiff, therefore, "must demonstrate that no reasonable officer could have found probable cause under the totality of the circumstances." *Id.* Probable cause exists "where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." *United States v. Pantoja–Soto*, 739 F.2d 1520, 1523 (11th Cir. 1984).

The Court concludes the officers are not entitled to qualified immunity for RH's claim of false arrest in Counts I and II because the officers did not have arguable probable cause RH was committing a crime when she was seized. The traffic stop conducted by Crenshaw was for speeding, and during that stop he learned that the driver, JH, was driving on a suspended license. That gave Crenshaw probable cause to arrest JH, but not RH, who was only a passenger. RH was seized by Foster while she was attempting to get JH's cell phone while he was being arrested, and RH "was not interfering with the officers' lawful performance of their duties." (Doc. 1, ¶ 43). In fact, after her arrest, RH was only charged with resisting arrest without violence, further indicating she was not committing a crime when she was seized and undermining the officers' reports that RH was interfering with

the arrest of JH. Accordingly, the Court concludes RH properly pled the violation of the clearly established right to be free from false arrest. That said, the Court is willing to reconsider this ruling at the summary judgment stage once the facts are further developed.

### 2. Qualified immunity for excessive force claims

"[C]laims of excessive force are to be judged under the Fourth Amendment's 'objective reasonableness' standard." *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (quoting *Brosseau v. Haugen,* 543 U.S. 194, 197, 125 S.Ct. 596, 598, 160 L.Ed.2d 583 (2004)). Courts are to consider whether an officer's use of force is reasonable in light of the facts confronting the officer on the scene "rather than with the 20/20 vision of hindsight." *Id.* So courts must weigh the facts of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Other considerations are "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Id.* Force is excessive when the amount and degree surpass what is "necessary in the situation at hand." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002).

Three counts allege that Foster (Counts I and III) and Crenshaw (Count IV) used excessive force against RH (Count I) and JH (Counts III and IV). Because the facts are different for RH and JH, their excessive force claims must be analyzed separately.

As to RH, the Court concludes Foster is not entitled to qualified immunity. As pled, RH had not committed a crime and was not being arrested when Foster first seized RH by

8

the arm. And Foster's use of the stun gun on RH's neck after he had seized her appears to surpass the amount of force necessary to restrain her. Finally, the alleged injuries RH suffered appear to be egregious. So the Court concludes Foster is not entitled to qualified immunity for the excessive force claim brought by RH.[2]

Turning to JH, the Court also concludes that neither officer is entitled to qualified immunity. JH was being peacefully arrested for a simple driving on suspended license charge, and told the officers about the knife in his pocket. When Foster seized RH, JH stood up but kept his hands on the hood of the police cruiser—never reaching for anything or attempting to flee. Crenshaw immediately seized JH, at which point Crenshaw and JH move out of range of the video camera. At this point in the recording, Crenshaw repeatedly yells, "Stop resisting!" while JH yells "I'm on the ground!" Foster then allegedly shot the barbs of his stun gun into JH's face and stunned him while he was on the ground. Considering these facts, the Court cannot say that the officers' use of force was reasonable because (1) the arrest was for a minor charge; (2) as pled, JH was not resisting arrest when the force against him was used; and (3) the amount of force by both officers appears disproportionate to the force necessary to arrest JH.

Based on the above, the Court concludes the Homonais have pled the violation of clearly established constitutional rights sufficient to survive the officers' motion to dismiss.

---

[2] If a factfinder determines RH was falsely arrested, then any force against her would be deemed excessive, and this claim would be subsumed into the false arrest claim. Thus, this analysis would be unnecessary. *Bashir v. Rockdale Cty., Ga.*, 445 F.3d 1323, 1331 (11th Cir. 2006).

The Court is willing to reconsider this issue at the summary judgment stage once the facts are more fully developed.

### 3. Qualified immunity for failure to intervene claims

Law enforcement officers can be held liable for failing to intervene when another officer uses excessive force if (1) the officer "is present at the scene" and (2) "fails to take reasonable steps to protect the victim." *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002) (quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441-42 (11th Cir. 1985)). "Therefore, an officer who is present at such a beating and fails to intervene may be held liable though he administered no blow." *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1342 (11th Cir. 2007). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000).

Three counts allege that Foster (Counts II and III) and Crenshaw (Count IV) failed to intervene against the unlawful use of excessive force against RH (Count II) and JH (Counts III and IV). There is no dispute that both Foster and Crenshaw were present at the scene. So whether they are entitled to qualified immunity turns on whether the officers were in a position to intervene and failed to do so.

The Court concludes RH and JH sufficiently alleged in the Complaint that Foster and Crenshaw were in a position to intervene and failed to do so. The video, in this respect, is unhelpful as it is impossible to tell where Crenshaw and JH were located after they moved out of the camera's range. But Foster was certainly close enough to use his stun gun on JH, which indicates Foster and Crenshaw were in close enough proximity to have

intervened in the other's allegedly unlawful use of force. So the Court concludes the Homonais pled the violation of a clearly established constitutional right. Whether the officers were occupied such that they had no reasonable opportunity to intervene is an issue the Court is willing to consider at summary judgment once those facts are developed.

**E. State Law Immunity for Officers for Florida Law Claims**

Foster and Crenshaw also claim they have immunity based on section 768.28(9)(a), Florida Statutes. While the statute does provide immunity for state law claims against officers acting within the scope of their employment, the Homonais have not brought state law claims against the officers. And the immunity provided by section 768.28(9)(a) does not extend to the section 1983 claims brought by the Homonais. *Hufford v. Rodgers*, 912 F.2d 1338, 1341 (11th Cir. 1990) ("State sovereign immunity may protect Sheriff Rodgers from state claims in state court; *state* immunity, however, has no application to claims, in federal court, under Section 1983."); *see also Claridy v. Golub*, 632 F. App'x 565, 571 (11th Cir. 2015) (discussing section 768.28(9)(a) immunity as it relates solely to state law claims). So the Court concludes section 768.28(9)(a) is inapposite to the claims against Foster and Crenshaw.

**F. Sovereign Immunity for the City**

The City argues that it is not liable for the Homonais' state law claims (Counts VII, VIII, and IX) because it has sovereign immunity pursuant to section 768.28(9), Florida Statutes. The statute provides in part,

> The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with

>malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

§ 768.28(9), Fla. Stat. This argument fails, though, because the Homonais do not allege that Crenshaw and Foster were acting outside the scope of their employment, or that they acted in bad faith, with malicious purpose, or with wanton and willful disregard of human rights, safety, or property. And even if the Complaint did allege such conduct by the officers, the Homonais can plead these claims against the City in the alternative. *Duquesne v. City of Miami Beach*, No. 12-20575-CIV, 2012 WL 3061603, at *13 (S.D. Fla. July 26, 2012). As such, this argument fails.

### G. No Cause of Action for Battery Incident to Arrest against the City

The City argues that it cannot be held liable in Counts VIII and IX for battery as a result of an arrest "where the acts alleged are simply part of the arrest process." (Doc. 21, p. 14). It is true that officers cannot be held liable for battery under Florida law for acts that are ordinary incidents of the arrest. *Lester v. City of Tavares*, 603 So. 2d 18, 19 (Fla. Dist. Ct. App. 1992). But a battery claim involving arguably excessive force "can present a jury question on an assault and battery count against an officer and municipality." *Johnson v. State Dep't of Health & Rehabilitative Servs.,* 695 So.2d 927, 929 (Fla. Dist. Ct. App. 1997) (citing *City of Homestead v. Suarez,* 591 So.2d 1125, 1126 (Fla. Dist. Ct. App. 1992)). So the Court concludes Counts VIII and IX should not be dismissed on this basis.

### H. No Cause of Action Exists for False Arrest or False Imprisonment Because Probable Cause Existed

The City also argues the false arrest and false imprisonment claims (Counts V and VII)[3] should be dismissed because the officers had probable cause—or arguable probable cause—to arrest the Homonais. The false arrest and false imprisonment claims are both brought by RH, so whether the officers had probable cause to arrest JH is irrelevant. For the reasons explained in the qualified immunity section above, the Court again concludes that RH sufficiently pled claims for false arrest and false imprisonment, which are sufficient to survive the City's motion to dismiss.

### I. No Municipal Liability

Lastly, the City argues that the Homonais' section 1983 claims are not cognizable based on *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694–95(1977) and *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). *Monell* and *Busby* discuss when a municipality, such as the City, can be held liable for the acts of its employees in a section 1983 action. Here, the Homonais seek to hold the City responsible in the Counts V and VI for (1) failing to institute policies to ensure against unlawful arrests and the use of excessive force; (2) failing to have a policy for investigating, disciplining, retraining, or remediating officers who use excessive force; (3) failing to have a policy to receive and review complaints of officer misconduct; and (4) failing to have a use-of-force policy. (Doc. 1, ¶¶ 33–41, 73, 75–76, 82, and 84–85). As explained below, the

---

[3] The City mistakenly refers to Counts VI and VII in its motion (Doc. 21, p. 15), but there is no false arrest or false imprisonment claim in Count VI.

allegations in the Complaint are sufficient for the section 1983 claims against the City to move forward even if the Homonais are ultimately unable to prove a connection between the policies and the alleged harm.

A municipality cannot be held liable under section 1983 on the basis of *respondeat superior* or vicarious liability. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). Instead, plaintiffs can hold a municipality liable by showing that acts or omissions pursuant to official municipal policy caused their injury. *Connick v. Thompson*, 563 U.S. 51, 60, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011). Plaintiffs can do so by proving a municipality has "practices so persistent and widespread as to practically have the force of law." *Id.* at 61, 131 S.Ct. 1350. Further,

> A municipality's "policy of inaction" in light of actual or constructive notice "that its program will cause constitutional violations is the functional equivalent of a decision by the [county] itself to violate the Constitution." "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." "A pattern of similar constitutional violations" is therefore "ordinarily necessary to demonstrate deliberate indifference."

*Buckler v. Israel*, No. 16-11115, 2017 WL 710431, at *3 (11th Cir. Feb. 23, 2017) (internal citations omitted).

The Homonais have alleged enough at this stage to survive the City's motion to dismiss. In addition to alleging the City's failure to implement certain policies, the Homonais allege the following:

> 40. The City had notice of oversight deficiencies at the Fruitland Park Police Department from prior scandals over multiple years, including KKK membership by its officers, its officers paying informants for false testimony, and the chief of police purchasing fake diplomas that he claimed as his own.

(Doc. 1, ¶ 40). While the Court is uncertain whether any of the specific scandals alleged would amount to deliberate indifference for the Homonais' supposed constitutional violations, the Court does not view the above list as exhaustive. As such, the Court concludes the Homonais should be given the chance to prove the City's deliberate indifference caused their claimed constitutional violations. Of course, if the Homonais are unable to do so, these claims may be resolved at the summary judgment stage.

Accordingly, it is ORDERED AND ADJUDGED that Defendants' Motion to Dismiss (Doc. 21) is DENIED.

**DONE** and **ORDERED** in Tampa, Florida, this 26th day of April, 2017.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
Counsel/Parties of Record